UNITED STATES of America,
Appellee,

v.

Gary MALCOLM, Appellant.

No. 840, Docket 34296.

United States Court of Appeals,
Second Circuit.

Argued June 17, 1970.

Decided Sept. 23, 1970.

MacMAHON, District Judge:

The appellant, Gary Malcolm, then eighteen years old, was convicted upon his plea of guilty to the crime of bank robbery (18 U.S.C. § 2113(a)) and sentenced to a term of fifteen years on March 22, 1968. He moved the district court in September 1969 for vacation, correction or reduction of sentence or, in the alternative, to vacate his plea of guilty under Rule 35, Fed.R.Crim.P., and 28 U.S.C. § 2255. The motion was denied without a hearing, but after a review of the record, as completely without merit and frivolous.

Malcolm now appeals from the order of denial, asserting error in the district court's dismissal of his petition without an evidentiary hearing on. his claims that: (1) he was mentally incompetent to plead guilty because he was then addicted and under the influence of drugs; (2) he was induced to plead guilty by the prosecutor's unfulfilled promise to recommend sentence under the Federal Youth Corrections Act and (3) he was sentenced illegally because the sentencing judge stifled the prosecutor's attempts to keep his promise, confused his criminal record and labored under a false assumption about his cooperation with city, state and federal authorities while refusing to hear evidence that he had rendered substantial assistance to the New York City police.

We first consider Malcolm's challenge to the validity of his plea and conviction.

 Essentially, Malcolm's claim is that his plea of guilty was neither knowing nor voluntary. "A defendant who enters such a plea simultaneously waives several constitutional rights, including his privilege against compulsory self-incrimination, his right to trial by jury, and his right to confront his accusers. For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment of a known right or privilege.' Johnson v. Zerbst, 304 U. S. 458, 464, 58 S.Ct. 1019, 82 L.Ed. 1461

Milton M. Craner, New York City, for appellant.

Jerome C. Ditore, Asst. U. S. Atty. (Edward R. Neaher, U. S. Atty., for the Eastern District of New York, on the brief), for appellee.

Before ANDERSON and FEINBERG, Circuit Judges, and MacMAHON, District Judge.*

* Of the Southern District of New York, sitting by designation.

(1938). Consequently, if a defendant's guilty plea is not equally voluntary and knowing, it has been obtained in violation of due process and is therefore void." McCarthy v. United States, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). Accordingly, a plea which is the tainted product of ignorance, incomprehension, coercion, terror, inducements, threats or promises is void. Boykin v. Alabama, 395 U.S. 238, 242–243, 89 S.Ct. 1709, 23 L.Ed.2d 274 (1969).

■ These safeguards of fundamental fairness make plain that Malcolm would be entitled to vacation of his plea and conviction if he proved that his mental faculties were so impaired by drugs when he pleaded that he was incapable of full understanding and appreciation of the charges against him, of comprehending his constitutional rights and of realizing the consequences of his plea. Sanders v. United States, 373 U.S. 1, 5–6, 19–20, 83 S.Ct. 1068, 10 L.Ed.2d 148 (1963). A plea in such circumstances is not a knowing, free and rational choice of the alternatives open to an accused and cannot be an intelligent waiver of constitutional rights. It would, therefore, offend due process. Boykin v. Alabama, supra; McCarthy v. United States, supra; Sanders v. United States, supra, 373 U.S. at 19–20, 83 S.Ct. 1068; Machibroda v. United States, 368 U.S. 487, 493, 82 S.Ct. 510, 7 L.Ed.2d 473 (1962); Kercheval v. United States, 274 U.S. 220, 223, 47 S.Ct. 582, 71 L.Ed. 1009 (1927).

■ The district court recognized these familiar principles but denied collateral relief without a hearing, because after review of the record it considered Malcolm's allegations unsupported, wholly without merit and completely frivolous. The statute requires "a prompt hearing" when the allegations of deprivation of constitutional rights raise disputed issues of fact in order to "determine the issues and make findings of fact and conclusions of law" with respect to them "unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255; Sanders v. United States, supra, 373 U.S. at 6, 15, 83 S.Ct. at 1077; Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); Machibroda v. United States, supra, 368 U.S. at 494, 82 S.Ct. 510; Note, Developments in the Law: Federal Habeas Corpus, 83 Harv.L.Rev. 1038 (1970). A hearing is not required, therefore, where the allegations are insufficient in law, undisputed, immaterial, vague, conclusory, palpably false or patently frivolous. Sanders v. United States, supra, 373 U.S. at 19, 83 S.Ct. 1068; Machibroda v. United States, supra, 368 U.S. at 494, 82 S.Ct. 510; Pennsylvania ex rel. Herman v. Claudy, 350 U.S. 116, 119, 76 S.Ct. 223, 100 L.Ed. 126 (1956).

With these principles in mind, we turn to the facts respecting Malcolm's plea of guilty.

■■ Malcolm was arraigned before the district court, Bartels, J., on January 25, 1968. His assigned counsel was relieved and retained counsel substituted. Following a brief conference between his attorney and the Assistant United States Attorney, Malcolm offered to plead guilty to count one of a two-count indictment. Malcolm was then personally interrogated by the judge, who first ascertained that he was eighteen years old but, despite his youth, did not inquire about addiction or recent use of drugs. The judge then read aloud count one charging Malcolm with knowing and wilful robbery of a bank, but he did not ask explicitly about each element of the crime, as required by Rule 11, Fed.R.Crim.P. McCarthy v. United States, supra. Malcolm's counsel, however, represented that he had advised him of the charges and Malcolm personally admitted to the judge that he understood them.[1] The judge proceeded to

1. This procedure, we observe, complied with the requirements under the pre-1966 Rule 11, Fed.R.Crim.P., but not with the procedural safeguards of amended Rule 11.

advise him of his right to a jury trial, to be confronted with the witnesses against him, to summon witnesses in his behalf and of the consequences of his plea, including possible sentence under the Federal Youth Corrections Act as well as the maximum statutory penalty. Malcolm then pleaded guilty. He was then asked: "Has anyone made any threats or promises or statements to induce you to plead guilty to this count?" He answered: "No." Replying to further questions, he said that he had discussed his plea with his attorney, that he was pleading guilty because he was guilty and for no other reason, and that he was doing so with full understanding of the consequence.

There is nothing in the form or content of the entire interrogation to suggest that Malcolm was under the influence of drugs or otherwise not in full possession of his mental faculties. On the contrary, he appears to have acted with intelligence and understanding. The arraignment proceedings, thus, appear regular on their face.

Nevertheless, Malcolm might have been under the influence of drugs and his condition would not necessarily be revealed by the record or be apparent to the judge who sees him only briefly. Regularity of the arraignment, therefore, cannot "conclusively show" that Malcolm's present claim is without merit, for the facts upon which such a claim is based are usually outside the record. Sanders v. United States, *supra*, 373 U. S. at 19–20, 83 S.Ct. 1068. Here, however, there is more to the record than the mere transcript of the arraignment.

The presentence report, part of the files and records upon which the court below relied both in imposing sentence and in denying Malcolm's application for collateral relief, conclusively refutes Malcolm's claim. That report shows that Malcolm was interviewed on January 25, 1968 immediately following his plea. He informed the probation officer that he had started using heroin about four months earlier, in September 1967, that he had gone to a Dr. Samuel Grubin for help in stopping his habit, and that he "had not taken a shot" in about three weeks. He also gave a detailed and coherent statement, in writing, admitting his crime from the planning to the division of the stolen money. Later, but before sentence, he produced a letter from Samuel Grubin, M.D., dated January 27, 1968 (two days after his plea), certifying that he "has been examined by me and found to be in good physical condition and free from any addiction."

Thus, the files and records conclusively show that immediately following his plea Malcolm admitted his guilt, denied the recent use of drugs, and confirmed his freedom from narcotics by certification of his own physician. In light of these immutable facts, there was no error in denying collateral relief on this claim without a hearing for, as Judge Abruzzo found, the files and records of the district court "conclusively show" that it is without merit.

▮▮▮ Confronted with the record, Malcolm claims that he deceived the probation officer so he would be released on bail and free to indulge his habit. Deceit is a fragile foundation for relief on habeas corpus. The statute itself, 28 U.S.C. § 2255, lends credence to the files and records, including petitioner's admissions against interest. Moreover discretion to deny relief where a claim is founded on petitioner's own fraud upon the court is implicit in the statutory command that the district judge "dispose of the matter as law and justice require." 28 U.S.C. § 2243. "Further-

However, Malcolm's plea on January 25, 1968 was made prior to the Supreme Court's decision in McCarthy v. United States, 394 U.S. 459, 89 S.Ct. 1166, 22 L.Ed.2d 418 (April 1969). *McCarthy* teaches that a defendant must be given an opportunity to plead anew when a guilty plea is accepted without full compliance with amended Rule 11. The *McCarthy* rule, however, is not retroactive, Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969), and in any event, as we shall see, there is ample evidence of Malcolm's guilt in the record.

more, habeas corpus has traditionally been regarded as governed by equitable principles. * * * Among them is the principle that a suitor's conduct in relation to the matter at hand may disentitle him to the relief he seeks." Fay v. Noia, 372 U.S. 391, 438, 83 S.Ct. 822, 848, 9 L.Ed.2d 837 (1963). This claim, thus, presents yet another instance where a court must "guard against allowing a defendant to profit from his own wrong in this way." Illinois v. Allen, 397 U.S. 337, 345, 90 S.Ct. 1057, 1062, 25 L.Ed.2d 353 (1970). There was no error, therefore, in rejecting this claim as wholly without merit.

The district court also found no merit in Malcolm's claim that his plea was induced by the prosecutor's unfulfilled promise to recommend sentence under the Federal Youth Corrections Act.

 A guilty plea, if induced by promises, or threats which deprive it of the character of a free and voluntary act is void. Machibroda v. United States, *supra*, 368 U.S. at 493, 82 S.Ct. 510, 7 L.Ed.2d 473. It does not follow, however, that a prosecutorial promise to recommend leniency necessarily deprives a plea of its voluntary character. Rather, as the Supreme Court emphasized in Brady v. United States, 397 U.S. 742, 749, 90 S.Ct. 1463, 25 L.Ed.2d 747 (1970), a guilty plea is the product of many factors, and its voluntariness can be determined only by considering "all of the relevant circumstances." Cf. Haynes v. Washington, 373 U.S. 503, 513, 83 S.Ct. 1336, 10 L.Ed.2d 513 (1963); Leyra v. Denno, 347 U.S. 556, 558, 74 S.Ct. 716, 98 L.Ed. 948 (1954). Thus, even if the alleged promise were proved, it would not necessarily entitle Malcolm to relief.

 The plea here was made in open court and Malcolm was represented and advised by counsel of his own choosing, circumstances which tend to "dissipate" the "coercive impact" of a prosecutor's promise to recommend leniency. Brady v. United States, *supra*, 397 U.S. at 754, 90 S.Ct. 1463. Moreover, the claim rests on nothing but Malcolm's bald conclusory allegation which is refuted by the record. Responding to Judge Bartels' explicit questions, Malcolm categorically denied that any promises had been made to induce his plea of guilty and stated that he was pleading guilty because he was guilty and for no other reason. Accordingly, there was no error in denying this claim.

We turn, then, to consideration of Malcolm's cluster of claims that his sentence was unduly severe and that the sentencing judge stifled the prosecutor from keeping his promise to recommend sentence under the Federal Youth Corrections Act, confused and magnified Malcolm's criminal record, labored under a false assumption that Malcolm was lying about his cooperation with city, state and federal authorities, and refused to hear any information that he was giving substantial assistance to the New York City police.

 Malcolm complains that his sentence was unduly severe and should be vacated or reduced for that reason. Congress, in its wisdom, has left the degree of punishment, imposed within the statutory limits, to the discretion of the sentencing judge. The sentence imposed here is well within the statutory maximum twenty-year prison sentence for bank robbery. 18 U.S.C. § 2113(a). This court, therefore, would have no power to review Malcolm's sentence even on direct review of the conviction, Gore v. United States, 357 U.S. 386, 393, 78 S.Ct. 1280, 2 L.Ed.2d 1405 (1958); Blockburger v. United States, 284 U.S. 299, 305, 52 S.Ct. 180, 76 L.Ed. 306 (1932), much less on review of the district court's denial of collateral relief by habeas corpus. Hill v. United States, 368 U.S. 424, 429, 82 S.Ct. 468, 7 L.Ed.2d 417 (1962); Townsend v. Burke, 334 U.S. 736, 741, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). Moreover, since the sentence is legal on its face, it is not subject to correction as an illegal sentence under Rule 35, Fed.R.Crim.P. Hill v. United States, *supra*, 368 U.S. at 430, 82 S.Ct. 468; Heflin v. United States, 358 U.S.

415, 418, 422, 79 S.Ct. 451, 3 L.Ed.2d 407 (1959).

■ Appellate courts, however, do have power to review a denial of collateral relief on a claim that a sentence is the product of procedures inconsistent with due process of law. Townsend v. Burke, supra.[2] The test for determining whether challenged procedures satisfy or deny due process has been phrased in many ways. The questions to be answered here are whether the sentencing process conformed with "fundamental principles of liberty and justice which lie at the base of all our civil and political institutions," Gideon v. Wainwright, 372 U.S. 335, 343–344, 83 S.Ct. 792, 796, 9 L.Ed.2d 799 (1963); In re Oliver, 333 U.S. 257, 273, 68 S.Ct. 499, 92 L.Ed. 682 (1948); Powell v. Alabama, 287 U.S. 45, 67, 53 S.Ct. 55, 77 L.Ed. 158 (1932), whether it was infected with fundamental defects resulting in a miscarriage of justice, and whether it was consistent with rudimentary demands of fair procedures. Hill v. United States, supra, 368 U.S. at 428, 82 S.Ct. 468. We must, therefore, scrutinize the sentencing proceedings in some detail to determine whether there is merit to Malcolm's claims that they were unfair.

■ We consider, first, Malcolm's claim that he was sentenced illegally because the sentencing judge stifled the prosecutor's attempt to recommend sentence under the Federal Youth Corrections Act.

As we have seen, the record of the arraignment proceedings before Judge Bartels on January 25 refutes Malcolm's allegation of any such promise by the prosecutor. There is not even a claim that such a promise was made in the interim between arraignment and sentence or at any later time, and there is nothing in the record of the sentencing proceedings before Judge Abruzzo which reveals any such promise.

Thus, the record and files conclusively show that there was no such promise. The pendent claim that the prosecutor was stifled from recommending sentence under the Federal Youth Corrections Act, therefore, falls with the premise. Accordingly, there was no error in denying this claim as wholly without merit.

This brings us to the claim that the sentencing judge was confused about Malcolm's criminal record. This claim has its origin in proceedings before Judge Abruzzo on March 7, 1968, two weeks before Malcolm was sentenced. Malcolm was scheduled for sentence on that day, but he appeared late without his attorney after a bench warrant had been issued. A co-defendant, Bostic, was on the calendar for pleading. He was represented by assigned counsel, pleaded guilty, and his sentence was set for March 22. The record of the rest of the proceedings is ambiguous, and we are unable to tell with certainty whether the judge "cast his eye or nodded his head" in Malcolm's or Bostic's direction. Cf. Green v. United States, 365 U.S. 301, 305, 81 S.Ct. 653, 5 L.Ed.2d 670 (1961).

It would seem, however, that Bostic's counsel, stressing that his client had no criminal record, applied for bail pending sentence. Unimpressed, the judge remanded Bostic because he was "a menace" "in with very bad company." Then, to prove his point, he attempted to read aloud Malcolm's criminal record from the presentence report but mistakenly stated that Malcolm had pleaded guilty to two of four state indictments for robbery, when, in fact, as Malcolm proclaimed immediately, he had been arrested for one robbery and voluntarily disclosed three others. He then had pleaded guilty to one, and, all four hav-

---

2. Note, Appellate Review of Sentencing Procedure, 74 Yale L.J. 379 (1964). Exceptions to the non-review rule have been justified on constitutional, Townsend v. Burke, 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948), statutory, Leach v. United States, 118 U.S.App.D.C. 197, 334 F.2d 945 (1964); Peters v. United States, 113 U.S.App.D.C. 236, 307 F.2d 193 (1962); United States v. Wiley, 267 F.2d 453 (7th Cir. 1959), and supervisory bases, United States v. Wiley, 278 F.2d 500, 503 (7th Cir. 1960).

ing been consolidated, the other three had been dismissed. A fifth robbery charge had been reduced to petty larceny, he had pleaded guilty and sentence was pending. Addressing Bostic's counsel, the judge said he was "not going to allow a man who uses a gun in five robberies out on the street for three weeks." Bostic's counsel tried to clear up the confusion by reminding the judge that the record which he had just recited related not to Bostic but to Malcolm whom he did not represent. Malcolm then intruded and attempted to set the record straight, but after agreeing that the state robbery charges had been consolidated into one plea, the judge, nonetheless, persisted asserting: "You are a menace. You have had five armed robberies." The court, then, sua sponte, revoked bail, remanded Malcolm and adjourned sentence until March 22, 1968.

Later, at sentencing on March 22, the judge again stated that he understood that the four robbery charges had been consolidated but twice emphasized mistakenly that Malcolm had pleaded guilty to four other crimes. The record on both occasions, therefore, shows that the judge was confused, if not altogether mistaken, about Malcolm's prior criminal record.

▆▆▆▆ Misinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process. Townsend v. Burke, *supra*, 334 U.S. at 740–741, 68 S. Ct. 1252. Not every defect in the sentencing process, however, is of constitutional dimension. Hill v. United States, *supra*; United States v. Fischer, 381 F. 2d 509 (2d Cir.1967). Perhaps, standing alone, the confusion here was more a matter of semantics than of substance. Arguably, the judge was not misinformed but simply misstated the legal import of accurate information before him. As a purely factual matter, there was nothing materially untrue in his understanding that Malcolm had committed five armed robberies, all involving a gun, for Malcolm had pleaded guilty to two, one of which had been reduced to petty larceny, and had admitted three others. The defect here was thus not so much factual as technical. The significance of the error diminishes further when we remember that a sentencing judge is not so narrowly restricted in imposing sentence that he cannot predicate sentence on habitual misconduct, whether or not it resulted in convictions. He may exercise a wide discretion in the sources and types of information used to assist him in determining an appropriate, just and enlightened sentence. Williams v. New York, 337 U.S. 241, 246–257, 69 S.Ct. 1079, 93 L.Ed. 1337 (1949).

▆▆▆▆ Yet, considering that three of the five indictments resulted, according to Malcolm, from his own voluntary disclosure, we cannot assume that Malcolm suffered no prejudice from the confusion. There can be no question that the garbled criminal record was the dominant factor influencing sentence. We cannot say that the sentencing judge would have given as heavy weight to the true history as he did to his distorted version. Thus, the judge's heavy emphasis, itself, intensifies the significance of his confusion. In that sense, therefore, Malcolm was prejudiced for he was sentenced on the basis of assumptions concerning his criminal record which were materially untrue. A sentence predicated on such a misreading of the record, especially when imposed in a context of other aggravating circumstances, violates due process. Townsend v. Burke, *supra*, 334 U.S. at 741, 68 S. Ct. 1252. We turn now to the other flaws in the informational basis of this sentence.

Malcolm's final claim is that the judge was mistaken and incredulous about his cooperation with city, state and federal authorities and refused to listen to verifying information. Protesting his remand on March 7, Malcolm had argued that he should be continued on bail because he was supplying the New York City police with information relating to

the murder of a policeman and several robberies. There was nothing about such cooperation in the presentence report, and when Malcolm's counsel informed the court of it during the sentencing on March 22, the judge, surprised and incredulous, stated:

"The Court: No. I am not aware of that. The United States Attorney has not said a word about that, that he is willing to help anybody. There is nothing in my record that indicates that. If that came up, it came up after I got this record.

Mr. Wohl [the prosecutor]: If your Honor please, I discussed this with the Probation Officer—

The Court: As a matter of fact, I do not care if he helps anybody. It does not matter to me. I have a defendant who has committed five major crimes within a period of 8 months. Now, he has got to go to jail and it is up to him to rehabilitate himself and not up to me. I have to do what I have to do and I do not care who he is going to help.

Mr. Wohl: I have information from the State authorities that he has cooperated with him [sic], and I think that was conveyed to the Probation Department.

The Court: They have four crimes in the State Court and they did not sentence him yet. They are yet waiting for us to sentence him.

Mr. Wohl: He was willing to cooperate but the other defendant pleaded guilty."

Later on, Malcolm's counsel returned to the subject:

"Mr. Lebetkin: I am going to tell your Honor why he got bail: Gary [Malcolm] received bail because he was working with the police in solving major crimes.

The Court: He told me he was working with the police when he pleaded guilty here.[3] I have not had one call from any police official that he was working with.

\* \* \* \* \* \*

Mr. Lebetkin: I am going to talk about this case, but your Honor has said something which is very important. Your Honor has said he has not had any communication from the police. There are two men in this Courtroom from the New York City Police Department—

The Court: I won't listen to them now. It is too late."

Rule 32(a), Fed.R.Crim.P., requires that "before imposing sentence the court shall afford" the defendant an opportunity "to present any information in mitigation of punishment." There can be no question that a defendant's cooperation in the investigation and prosecution of the murder of a policeman and other serious crimes is highly material to mitigation of punishment not only because the defendant should be rewarded for his services to the community but also because cooperation with law enforcement authorities is a significant step toward rehabilitation. Clearly, therefore, Malcolm had a right to present all available information bearing on his cooperation with the authorities fully and accurately, and, correlatively, the court had a duty to listen and to give such information serious consideration. Nevertheless, neither Rule 32(a) nor due process requires a judge to interrupt the sentencing proceedings to hold an evidentiary hearing. Williams v. New York, *supra.* The judge's refusal to hear two unidentified witnesses "from the New York City Police Department" at the last minute of the sentencing proceedings is, therefore, understandable, especially when there was nothing in the presentence report about cooperation with the city police despite the lapse of two months between plea and sentence.

Conscientious judges need time for study and deliberation based on the best

---

3. Malcolm did not plead before Judge Abruzzo, but he did so inform the judge at his remand.

available information before imposing sentence and therefore place heavy reliance on the presentence report. Williams v. New York, *supra*, 337 U.S. at 249–250, 69 S.Ct. 1079. This judge was no exception. Indeed, it was his blind faith in the report that caused his incredulity and closed his mind to all efforts to convince him that Malcolm had indeed cooperated. Rushed by a heavy calendar,[4] the judge simply overlooked the possibility of human error. Unhurried and gifted with flawless hindsight, it is obvious to us that there was a breakdown in communications with the result that neither the probation department nor the judge got the message. Obviously, someone had advised the prosecutor who "thought" it had been "conveyed" to the probation department. The line of communication broke completely when neither the prosecutor nor Malcolm's attorney was able to get through to the judge upon the sentencing. We are less concerned, however, with the cause than with the fact of the fault, for whatever the reason, Malcolm's right "to present any information in mitigation of punishment" was gravely impaired, if not altogether denied.

 While mere omission to observe the formal requirements of Rule 32(a) "is not of itself an error of the character or magnitude cognizable under a writ of habeas corpus," Hill v. United States, *supra*, 368 U.S. at 428, 82 S.Ct. at 471, 7 L.Ed.2d 417, the error here, unlike *Hill*, was not simply an omission of formal requirements of Rule 32(a), nor does it stand alone. Rather, it occurred in the context of other aggravating circumstances which so infect the sentencing process with material irregularities, confusion, false assumptions and misinfor-

mation that the sentence must be vacated as the product of a denial of due process.

 One of the important functions of the prosecutor upon a sentence is to make sure that all information in his possession material to punishment and favorable to the accused is presented to the court and that the sentence is not based on mistakes of fact or faulty information. Cf. Brady v. Maryland, 373 U.S. 83, 87, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963). See American Bar Association Project on Minimum Standards for Criminal Justice: Standards Relating to Sentencing Alternatives and Procedures § 5.3 (Tentative Draft 1967). The prosecutor here conscientiously tried to perform his duty, but at no time during the sentencing was he given an uninterrupted opportunity even to speak, much less to address the court in the regular order fully stating the government's position. He managed to interrupt on three occasions in a futile effort to extricate the judge from his own mistakes by supporting defense counsel's claim that Malcolm was indeed willing to cooperate both with the government and with city and state authorities, but each time he was cut off, once in mid-sentence. He simply could not communicate. Nor could defense counsel penetrate the shroud of suspicion that enveloped the judge's mind.

The sentencing process becomes an empty ritual, and a defendant's right to present "any information in mitigation of punishment" is meaningless, unless the judge keeps an open mind until after he has heard all of the parties calmly and fully without interruption in an orderly manner. Neither that procedure nor atmosphere prevailed here. Instead,

---

4. N.Y.L.J., March 22, 1968, p. 19:
"Before Abruzzo, J.
 CIVIL SESSION, PART IV
 At 10 A.M.
 Criminal Motion
65–CR–73 U.S.A. v. Uhrman
 For Sentence
68–CR–24 Joseph Edward Bostic, Jr.,
 David Jones

68–CR–26 Joseph Edward Bostic, Jr.,
 David Jones, James A.
 Jones, Donald Penelton
68–CR–25 Gary Malcolm
 11 A.M.
 CIVIL NON-JURY CAUSE
 (FOR TRIAL)
1738–65–C–918 Weist v. U.S.A."

the judge constantly interrupted and effectively curtailed and precluded not only defendant but even the prosecutor from presenting information highly material to mitigation of punishment. Worse, no one had an adequate opportunity to clear up his confused version of Malcolm's criminal record or to dispel his disbelief and explain the scope and significance of Malcolm's cooperation.

The result of the procedural irregularity is that the sentence rests on a foundation of confusion, misinformation and ignorance of facts vitally material to mitigation. If justice is to be done, a sentencing judge should know all the material facts. The information which was curtailed and precluded here should therefore have been received and considered. Fair administration of justice demands that the sentencing judge will not act on surmise, misinformation and suspicion but will impose sentence with insight ' and understanding. Harris v. United States, 382 U.S. 162, 166, 86 S. Ct. 352, 15 L.Ed.2d 240 (1965).

The judge, therefore, is required to listen and to give serious consideration to any information material to mitigation of punishment. We cannot say that if the judge had acted on the basis of complete and accurate information, verified by the prosecutor, it would have had no mitigating impact on the sentence. This is so although the judge, in his discretion, is not required to lighten the penalty even if there are mitigating circumstances. But no man can make valid judgments without knowledge of the facts. It is thus of no moment that the judge summarily declared that he did "not care if he helps anybody. It does not matter to me."

We conclude, therefore, that the combination of procedural irregularities, confusion, misunderstanding and misinformation in the sentencing process here requires reversal and remand for resentencing.

Accordingly, the order of the district court is affirmed as to denial of the motion to vacate Malcolm's conviction upon his plea of guilty but reversed as to the motion to vacate sentence and remanded for resentencing upon a full and complete presentation of the facts material to the government's position respecting sentence, the extent of appellant's criminal record and the fact and value of appellant's cooperation with city, state and federal authorities. An evidentiary hearing should be held, if necessary, to determine any disputed issues of fact.