Accordingly, it is hereby ordered that the petition for a writ of error coram nobis should be and it is hereby denied.

UNITED STATES of America,
v.
Glenn W. HALL, Defendant.
No. 71-CV-312.

United States District Court,
N. D. New York.
Nov. 12, 1971.

Bailey, Alch & Gillis, Boston, Mass., for defendant; Gerald Alch, Boston, Mass., of counsel.

James M. Sullivan, Jr., U. S. Atty., Syracuse, N. Y., for the United States; Joseph R. Brennan, Asst. U. S. Atty., of counsel.

## OPINION

MacMAHON, District Judge.*

Petitioner, Glenn W. Hall, was convicted for armed robbery of a bank following a trial by jury from May 7, 1969 to May 12, 1969, at Auburn, in the District Court for the Northern District of New York. He was sentenced on May 27, 1969 to a term of ten years; his conviction was affirmed on appeal, and certiorari was denied. United States v. Hall, 421 F.2d 540 (2d Cir.1969), cert. denied, 397 U.S. 990, 90 S.Ct. 1123, 25 L.Ed.2d 398 (1970). He now moves for a hearing and vacation of his conviction and sentence on the ground that his constitutional rights under the Fourteenth Amendment were violated.[1]

As in most bank robbery cases, there was virtually no dispute upon the trial that a masked man, armed with a rifle, forced a teller to open a vault and robbed the Cicero branch of The Merchants National Bank & Trust Co. of Syracuse of $37,872.44, none of which was ever recovered. The only genuine issue on the trial was whether petitioner was the robber. The Court of Appeals, noting that the case against petitioner was strong, affirmed his conviction.

Petitioner brings his present motion under 28 U.S.C. § 2255, claiming that agents of the government, who testified at his trial, "withheld information directly bearing on whether or not * * * [petitioner] should have been advised of his rights in accordance with Miranda v. Arizona, 384 U.S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694" (1966).

We granted an evidentiary hearing because material issues of fact were raised in the supporting and answering affidavits which could not be resolved by resort to the pleadings and files and records of the case. Sanders v. United States, 373 U.S. 1, 83 S.Ct. 1068, 10 L. Ed.2d 148 (1963); Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963); United States v. Malcolm, 432 F.2d 809, 812 (2d Cir.1970). Those issues bear on our ruling during trial, affirmed by the Court of Appeals, that petitioner was not in custody when he made a false exculpatory statement to F.B.I. agents.

The Miranda question now raised cannot be answered without regard to the circumstances under which it arose.

The government sought to introduce testimony upon the trial concerning a false exculpatory statement made by petitioner to agents of the F.B.I. during their initial interrogation of him at his apartment in North Tonawanda, N.Y., on December 12, 1968. The agents did not give petitioner the Miranda warnings until seventeen minutes after the interrogation had begun. During that period, petitioner made a statement, later proved false, that his car was in

---

* Of the Southern District of New York, sitting by designation.

1. Petitioner moved earlier for post-conviction relief on different grounds than those claimed here, and we denied that application in an unpublished opinion on December 14, 1970. United States v. Hall, Docket No. 68–CR–158 (N.D.N.Y.).

front of his apartment house on the morning of the robbery.

Petitioner, relying on *Miranda*, objected to admission of the false exculpatory statement, whereupon we held a full and fair evidentiary hearing during the trial to determine whether petitioner had been denied due process in accordance with the teachings of *Miranda*. Finding that he was not in custody when he made the false exculpatory statement during the initial seventeen minutes of interrogation, we held that his *Miranda* rights had not been violated and admitted the statement in evidence.

The central question raised by petitioner on direct appeal was whether the agents had violated his rights in failing to give him *Miranda* warnings during the initial interrogation. Addressing itself solely to the issue of whether petitioner had been denied due process according to the *Miranda* teachings, the Court affirmed petitioner's conviction and, speaking through now Chief Judge Friendly, expressly upheld our ruling, saying that:

> "[W]e agree with the district judge that the initial interrogation was not during a period when Hall was in custody or his liberty was significantly restrained * * *." 421 F.2d at 546.

Elaborating, the Court of Appeals observed:

> "[I]n the absence of actual arrest something must be said or done by the authorities, either in their manner of approach or in the tone or extent of their questioning, which indicates that they would not have heeded a request to depart or to allow the suspect to do so. This is not to say that the amount of information possessed by the police, and the consequent acuity of their 'focus,' is irrelevant. The more cause for believing the suspect committed the crime, the greater the tendency to bear down in interroga-

tion and to create the kind of atmosphere of significant restraint that triggers *Miranda*, and *vice versa*. But this is simply one circumstance, to be weighed with all the others." 421 F.2d at 545.

Balancing the factors, the court found that the physical circumstances [2] of the initial interrogation were outweighed by the fact "that the only piece of information the agents then had was the presence of Hall's car near the scene and at the time of the robbery" and therefore held that the defendant was not in custody during the initial seventeen minutes.

Petitioner now claims that the agents possessed much more information about him during the period of the initial interrogation than they revealed in their testimony on the evidentiary hearing held during trial. Petitioner claims that the F.B.I. had conducted an investigation of him before they talked to him and had discovered other potentially incriminating facts. He also claims that the F.B.I. prevented his girl friend from entering his apartment during the interrogation. He maintains that if these facts had been disclosed upon the hearing, neither this court nor the Court of Appeals could have found that he was not in custody when the interrogation began. He further contends that the agents' failure to reveal their prior investigative activities at the previous hearing constituted a denial of due process.

These issues of fact were material and could only be resolved by an evidentiary hearing which we granted. . We turn now to a consideration of petitioner's claims in light of the facts developed on that hearing.

 Petitioner claims that Richard Schaller, the F.B.I. agent who conducted the initial interrogation, possessed substantially more information about him

---

2. The restricted size of Hall's apartment, the number of officers present, and the somewhat extensive questioning. 421 F.2d at 545.

at that time than the fact that his car had been seen at the scene of the crime. The evidence does not substantiate this claim.

The hearing revealed that before the challenged interrogation, Schaller had discovered from petitioner's employer that he had not been in his office on the morning of the robbery. However, the employer did not suggest that this was unusual and, considering the nature of petitioner's work as an insurance sales trainee, there was no reason to consider his absence from the office incriminating. Furthermore, Schaller testified that before he interrogated petitioner, one of petitioner's neighbors told him that she had seen petitioner's car in front of the apartment house around 8:30 that morning. If this were true, it would have been impossible for petitioner's car, parked in North Tonawanda at 8:30 A.M., to have been at the scene of the crime in Cicero, some 150 miles away, at 8:00 A.M. This information, we think, would have allayed any suspicion Schaller might have had and would have significantly blurred the focusing of any investigation on petitioner.

Moreover, before the interrogation, Schaller had visited the office of the New York Telephone Company, where Patricia Anderson, petitioner's girl friend, worked. A supervisor in that office told Schaller that petitioner had not accompanied Miss Anderson to work that morning. Usually, the supervisor said, they arrived together but in separate cars, she in her's, and he in his. This tended to corroborate the neighbor's account that Hall's car was in front of the apartment house at 8:30 that morning. The supervisor also informed Schaller that Miss Anderson was leaving her job to marry petitioner, who was to come into some money through a sale of stock. There was certainly nothing incriminating about this information.

Petitioner claimed in his papers that during this interview at the telephone company, the F.B.I. learned that petitioner had made a telephone call from Churchville, near Rochester, to Tonawanda, at 9:37 A.M. on the day of the robbery. Petitioner offered no evidence of this at the hearing and did not challenge government affidavits which stated that the information about the incriminating telephone call was not learned by the F.B.I. until May 1969, almost five months after the interrogation of petitioner.

Petitioner also offered the testimony of his acquaintances, Mr. and Mrs. Robert Owen of Clay, N.Y., near Syracuse, to the effect that before he was interrogated on December 12, F.B.I. agents had asked the Owens about his car, his ownership of a gun, and any money problems he might have.

The hearing revealed that the Owens were interviewed in Clay on the morning of December 12 by agents from the Syracuse office of the F.B.I. The agent who conducted the interviews, however, labelled them unproductive and made no report of them to his superiors. Agent Schaller knew nothing whatever about these interviews when he interrogated petitioner in North Tonawanda.

■ Petitioner's final assertion is that at 5:05 P.M. on December 12, F.B.I. agents refused to admit Patricia Anderson when she attempted to visit him at his apartment as he was being interviewed by the F.B.I. Petitioner contends that this demonstrates that while being interrogated he was deprived of his freedom in a significant way. Patricia Anderson testified that the F.B.I. agent did not order her not to enter petitioner's apartment but merely told her that it would be better if she did not. This falls far short of a showing that petitioner was in custody at the time. More significantly, this attempted 5:05 P.M. visit occurred well after the initial interrogation, which ended at 4:39 P.M. Before 5:05 P.M., petitioner had been given the *Miranda* warnings and had

signed a waiver. There is, therefore, no merit to this claim.

It is undisputed that both Schaller and other F.B.I. agents conducted interviews about petitioner before he was interrogated on December 12. But this indicates only that petitioner was under considerable suspicion at the time of the challenged interrogation. This fact was weighed and considered by both this court at the trial and by the Court of Appeals on direct appeal. As the latter court held:

> "[S]*omething* more than official interrogation must be shown. It is hard to suppose that suspicion alone was thought to constitute that something; almost all official interrogation of persons who later become criminal defendants stems from that very source." 421 F.2d at 544.

None of these interviews sufficiently sharpened the focus of inquiry upon petitioner to cause Schaller "to bear down in interrogation and to create the kind of atmosphere of significant restraint that triggers *Miranda*." Rather, the picture is still as the Court of Appeals pundits described it:

> "The picture presented to us is one of F.B.I. agents conscientiously interviewing a man, engaged in a respectable occupation, who was under considerable suspicion but whom they knew they could not lawfully arrest, and sedulously abstaining from any threat that they would." 421 F.2d at 545–546.

Petitioner established nothing at the evidentiary hearing which would alter this picture of the challenged interrogation, and his claims must, therefore, be considered without merit.

Accordingly, petitioner's motion to vacate his conviction and sentence is denied. This opinion constitutes our findings of fact and conclusion of law, pursuant to 28 U.S.C. § 2255.

So ordered.