UNITED STATES of America, Appellee,

v.

Sidney STEIN, Defendant-Appellant.

No. 322, Docket 76–1299.

United States Court of Appeals, Second Circuit.

Argued Sept. 15, 1976.

Decided Oct. 22, 1976.

Angelo T. Cometa, New York City (Louis Nizer, Perry S. Galler, Jonathan D. Warner, Phillips, Nizer, Benjamin, Krim & Ballon, New York City, of counsel), for defendant-appellant.

Lawrence B. Pedowitz, Asst. U. S. Atty. (Robert B. Fiske, Jr., U. S. Atty. for the Southern District of New York, New York City, Frank H. Wohl, Asst. U. S. Atty., New York City, of counsel), for appellee.

Before LUMBARD, MANSFIELD and MULLIGAN, Circuit Judges.

MANSFIELD, Circuit Judge:

Sidney Stein appeals from an order of the Southern District of New York, Constance Baker Motley, *Judge*, denying reconsideration of his motion challenging consecutive sentences totalling 10 years imprisonment and fines amounting to $25,000, which were imposed after he had pleaded guilty to charges of conspiracy, 18 U.S.C. § 371, secu-rities fraud, 15 U.S.C. §§ 78j, 78ff and Rule 10b–5, and interstate transportation of un-registered securities, 15 U.S.C. § 77e, and had cooperated extensively with the government, testifying against co-defend-ants, some of whom were convicted and received substantially lesser sentences than that imposed upon Stein. He contends that the sentence was both excessive and illegal. Because the harsh sentence was imposed by the sentencing judge under an apparent misapprehension as to certain material facts, because she failed to permit appellant and his counsel to be heard when they attempted immediately after imposition of the sentence to address the court, and be-cause the defendant was furnished by the court with a materially incorrect impression of the Probation Officer's recommendation, we hold that there was a denial of due process. Accordingly the sentence is vacat-ed and the case remanded to the district court for resentencing.

Prior to the filing in 1974 of the indict-ment in this case Stein, now 50 years old, had been a principal figure in numerous securities law violations, including frauds and stock manipulations, which dated back to the early 1960s and continued until ap-proximately 1972. Despite his involvement in these illegal activities he apparently be-gan cooperating with the government in the late 1960s, furnishing information with respect to the conduct of others in certain security frauds, manipulations and other crimes. On May 27, 1971, after a jury trial before Judge Frederick van Pelt Bryan in the Southern District of New York, he was convicted of federal security law violations based upon manipulation of the stock of the Buckeye Corporation in 1960 and 1961 and was sentenced to a term of two years im-prisonment. However, he continued his co-operation with federal authorities, testify-ing in various other trials in the Southern District of New York in 1971, 1972 and 1973 and acting as an undercover agent for the Bureau of Narcotics and Dangerous Drugs in obtaining evidence of trafficking in nar-cotics on the part of a California attorney. As a result of this cooperation Judge Bryan, on January 30, 1973, reduced Stein's sen-

tence to time already served (approximately 90 days) and placed him on probation for five years, on the understanding that he would continue to cooperate with federal law enforcement authorities, which he did.[1]

On June 4, 1974, a grand jury in the Southern District of New York filed the present indictment against Stein and nine others, charging them in 20 counts with a 1968–69 conspiracy to violate the federal securities laws and mail fraud statutes in the sale of unregistered stock of Stern-Haskell, Inc. and various substantive violations, including employment of schemes to defraud, use of manipulative and deceptive devices in the sale of stock, and obtaining money and property by means of untrue statements. See *United States v. Rubinson*, 543 F.2d 951 (2d Cir. 1976). The charges were based upon a scheme devised and carried out in 1968 and 1969 for the marketing of some 200,000 unregistered Stern-Haskell shares. On January 9, 1975, Stein pleaded guilty to Counts One (charging all defendants with conspiracy in violation of 18 U.S.C. § 371), Seven (use of the mails to sell Stern-Haskell stock in violation of Rule 10b–5 and 15 U.S.C. §§ 78j and 78ff), and Fourteen (sale of unregistered shares of Stern-Haskell stock in violation of 15 U.S.C. §§ 77e and 77x).[2]

Trial of Stein's co-defendants commenced on January 22, 1975. Stein, continuing to cooperate with the government, testified as a government witness for six days. The jury found four defendants guilty and acquitted three.[3]

On March 28, 1975, Stein appeared before Judge Motley for sentencing. The government prepared and submitted to the court a sentencing memorandum describing Stein's cooperation, including his testimony in various cases (including that in *United States v. Quase*, 73 Cr. 80, and his testimony before the grand jury and at trial in the present case) and his cooperation with the FBI and the Internal Revenue Service.[4] Judge Motley also had before her a copy of the presentence report prepared by the U.S. Probation Officer for use by Judge Bryan in the 1971 sentencing after Stein's conviction in the trial before him (66 Cr. 732) and a supplemental pre-sentence report prepared by the Probation Officer for the present case, dated March 12, 1975. Using a form customarily employed by the U.S. Probation Officer in the Southern District of New York, each of these pre-sentence reports sets forth pertinent data, including a description of the offense for which Stein had been convicted, a statement of his version of the events, his prior criminal history, personal and background data, emotional and physical factors, business history, pending information, finances and—a matter of considerable significance in the present case—the Probation Officer's "Evaluation" or "Evaluative Summary" in which the Officer frequently makes a recommendation with respect to the sentence to be imposed.

At the sentencing hearing Stein's counsel urged the court to place Stein on probation, pointing out that Judge Bryan had followed this course in the earlier case and that Stein had since conducted himself in a lawful manner, cooperating extensively with various governmental agencies. The government rested on its sentencing memoran-

---

1. On February 5, 1973, one week after he was sentenced by Judge Bryan in 66 Cr. 732, Stein was sentenced by Judge Charles Brieant of the Southern District of New York to pay fines totalling $3,750 upon his plea of guilty on the same date to three counts of an indictment charging him with perjury in proceedings held, pursuant to the SEC's application to enjoin violation of the federal securities laws in the sale of stock of Radio Hill Mines.

2. Before the guilty plea was entered the parties revealed to the court an understanding between Stein and the government to the effect that if Stein continued to cooperate with the govern-

ment he would not be prosecuted for any other prior crimes revealed to it and that the nature and extent of Stein's cooperation would be made known to the court at the time of sentencing.

3. For a full statement of the facts see *United States v. Rubinson, supra,* at 953–958.

4. Before sentencing Stein in open court, Judge Motley held a robing room conference with counsel and Stein, in which Stein's cooperation with the government was also described by counsel.

dum. Stein, exercising his right of allocution, stated that he had rehabilitated himself and would continue to cooperate with the government. Judge Motley, after reviewing Stein's criminal record, stated that she concurred in the evaluation of the September 14, 1971, pre-sentence report prepared by the U.S. Probation Officer for Judge Bryan. She then read verbatim that evaluation. After reviewing Stein's fraudulent behavior and describing him as a major manipulator of stocks, the Evaluative Summary concluded that Stein had shown "no remorse for his involvement," that he would "continue to act in a fraudulent and manipulative manner," that he "deserves no consideration despite his so-called cooperation in other cases," and that he was "acting in his own self-preservation so that he could not himself be criminally prosecuted." It concluded, "a commitment and fine in his case is recommended on Stein's activities alone. Additionally a commitment hopefully will forewarn others that this type of offense could result in serious consequences." [5]

Although Judge Motley mentioned in passing that she had read the Probation Officer's *supplemental* pre-sentence report prepared for her sentencing of Stein, which updated the 1971 report, she did not describe the contents of the supplemental report other than to state at the pre-sentence chambers conference that it "doesn't contain much additional information." However, the Probation Officer's Evaluative Summary attached to the supplemental report as a separate sheet, in sharp contrast to that forming part of the earlier report, states:

"Stein admits his guilt, verbalizes remorse, and has been cooperating with the Government.

5. The following portion was quoted by Judge Motley in open court:

" 'Stein has developed a rightly earned reputation among the Securities and Exchange Commission as one of the major manipulators of stocks. His method of operation is simply to acquire shell companies for which he gets a percentage, obtains underwritings for them and then creates an artificial market. When the price is right, Stein "dumps" his stock causing havoc for the other investors, some small and big. He operates under the guise of respectability reinforced by his pervasive and glib personality which makes him formidable opposition. There appears little doubt that Stein is one of the major offenders in this field. There is a history and pattern of this behavior with three cases, including one for forgery about to break open in this court, all leading to considerable prosecution.

" 'In all cases it appears that Stein emerges as the principal and the one who dominates and controls every and all situations. Since the filing of the indictment on the instant offense in 1966 Stein has been quite active.

" 'Another indictment was filed in 1968 (dismissed) and two injunctions were issued with respect to Stein's violations of securities laws in 1970. Although outwardly courteous and cooperative during the investigation Stein, in our opinion, was completely vague and guarded, especially concerning his finances and current business. Stein, a complex man, operates in a complex field and commits complex offenses. Not only a "merger and acquisition man", which in itself can be legitimate, Stein is one-third owner of a hotel and restaurant in Miami Beach, Florida.

" 'Despite these surface qualities of respectability Stein's several indictments and injunctions, both past and present, tend to cast certain sinister implications about his overall activities, including his name being mentioned in three cases with men reputed to be on the organized crime list.

" 'In any event, it certainly appears that Stein has learned little about himself in the process and will continue to act in a fraudulent and manipulative manner. He shows no remorse for his involvement and indicates that he is innocent not only of the instant offense but of other offenses.

" 'Stein deserves no consideration despite his so-called cooperation in other cases. In each case it appears Stein was acting in his own self-preservation so that he could not himself be criminally prosecuted.

" 'In our opinion, whatever has been uncovered by Stein until now is but the periphery of his true activities and manipulations. Stein despite three unsolicited letters attesting to his character (attached) is not a deserving candidate for probation.

" 'Stein is one of the better known men in this field, not only to government agencies and courts, but among Wall Street brokers, dealers, attorneys, etcetera.

" 'A commitment and fine in this case is recommended on Stein's activities alone. Additionally, a commitment hopefully will forewarn others that this type of offense could result in serious consequences.' "

"In view of the foregoing, it is respectfully recommended that this defendant be placed on probation."

It does not appear that this supplemental report was ever made available to or read by counsel. For reasons suggested below the Evaluative Summary quoted above may not have been read by Judge Motley. Had it been furnished to counsel, we are confident that the quoted portion, which was of considerable significance in view of Judge Motley's quotation of the evaluation from the earlier report, would have been called to her attention.

Following her reading of portions of the 1971 Probation Office report, Judge Motley sentenced Stein to the maximum sentence that could be imposed on each of the three counts to which he pleaded guilty: 5 years and a committed $10,000 fine on Count One, 2 years and a committed $10,000 fine on Count Seven to run concurrently with the sentence of Count One, and 5 years and a committed $5,000 fine on Count Fourteen to run consecutively to the sentence on Count One. As a result, Stein was sentenced to 10 years imprisonment and payment of committed fines totalling $25,000, based on imposition of consecutive sentences with respect to the same criminal course of conduct.

When Stein's counsel, undoubtedly taken aback by the severity of the sentence, asked to be heard the court replied "No, the defendant is remanded," adding "We are not going to have anymore attempted suicides or anything else with Mr. Stein. We have been through that." Similarly when Stein asked "May I say something, your Honor?" the court replied "The defendant is remanded."

On July 28, 1975, Stein filed a "Motion for Mitigation" accompanied by a memorandum prepared by his counsel which argued (1) that the court, by relying so heavily on the negative evaluation quoted from the out-dated 1971 pre-sentence report instead of considering Stein's intervening cooperation and rehabilitation, had been under a mistaken impression as to Stein's current motivation and the genuineness of his post-1971 rehabilitation, (2) that the court had imposed sentence in the mistaken belief that Stein had attempted to get his sentence in the 1971 case "fixed," and (3) that the court had acted under the misapprehension that Stein, after being sentenced by Judge Bryan in 1971, had engaged in "an attempt to avoid going to jail by feigning suicide." The memorandum made an effort to correct these possible misimpressions by setting forth pertinent facts in detail.

The evidence as thus adduced indicated that Stein had not engaged in any illegal activities since at least 1972 and that he had cooperated extensively with the government, allowing himself to be used in an undercover capacity, even after he learned in March 1974 that he was likely to be indicted in the present case, thus indicating that he was not motivated solely by self-preservation. With respect to the charge made by other defense counsel during the trial (when Stein was testifying for the government) that Stein had attempted to "fix" his sentence in the 1971 case, his counsel brought out that Stein had reported the facts to the government and had acted as an undercover informant in an effort to obtain evidence against those claiming to have influence with the court in the earlier case. As for the statement that Stein had "feigned suicide," his counsel offered proof that the suicide attempt was genuine, that Stein had a long history of psychiatric illness which grew worse as he faced imprisonment and that on October 12, 1972, before boarding the plane on which he consumed the overdose of pills, his life had been threatened. The psychiatric study made shortly thereafter by the U.S. Medical Center, Springfield, Mo., supported Stein's claim of psychiatric illness.[6]

6. The United States Medical Center Report stated:

"There is professional medical unison suggesting that Stein is but a step away from total personality disintegration and possible psychosis.

\*   \*   \*   \*   \*   \*

"If he is not immediately subjected to an extended period of psychotherapy and sup-

Stein's counsel asked for an oral hearing on his motion directed toward the sentence imposed by Judge Motley. In response to his motion the government filed a memorandum recommending that, in view of Stein's cooperation since 1972, which was described as "extensive," and the absence of any "reliable information that Stein has committed any crime since 1972," the sentence be reduced but not below five years imprisonment and the $25,000 fine imposed by the court. On October 22 the court denied Stein's motion without hearing and without making any findings of fact with respect to the matters claimed to be the subject of misapprehension by the court. The parties did not learn of the denial for a couple of months.

On January 23, 1976, Stein filed a petition for reconsideration of the earlier decision denying his motion directed toward the sentence and asked for oral argument. On March 9, 1976, Judge Motley denied the petition without hearing or findings in a cryptic endorsement "Petition for reconsideration denied. See Court's statement at time of sentence." From this order Stein appeals.

## DISCUSSION

The threshold question is whether the order denying reconsideration of Stein's motion directed toward his sentence is reviewable. If the motion were limited to a claim that the sentence was excessive, we would be forced to deny review in accordance with the general principle recently restated by us in *United States v. Seijo,* 537 F.2d 694, 700 (2d Cir. 1976):

"The Supreme Court has recently reaffirmed the 'general proposition that once it is determined that a sentence is within

the limitations set forth in the statute under which it is imposed, appellate review is at an end.' *Dorszynski v. United States,* 418 U.S. 424, 431, 94 S.Ct. 3042, 41 L.Ed.2d 855 (1974)."

See also *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972); *United States v. Brown,* 479 F.2d 1170, 1172 (2d Cir. 1973). The sentences here were within the statutory limits and cannot be set aside on the ground that they were made to run consecutively, a decision resting within the trial judge's discretion. *Hartson v. United States,* 14 F.2d 561 (2d Cir. 1926); *United States v. Grene,* 455 F.2d 376 (5th Cir.), *cert. denied,* 409 U.S. 856, 93 S.Ct. 136, 34 L.Ed.2d 101 (1972); *Gilinsky v. United States,* 430 F.2d 1292 (9th Cir. 1970).

■ On the other hand, a motion to vacate a sentence on the ground that the sentencing judge acted on the basis of erroneous assumptions or information that was materially incorrect rests on a different footing; in that case

"[i]t is not the duration or severity of this sentence that renders it constitutionally invalid; it is the careless or designed pronouncement of sentence on a foundation so extensively and materially false, which the prisoner had no opportunity to correct by the services which counsel would provide, that renders the proceedings lacking in due process." *Townsend v. Burke,* 334 U.S. 736 at 741, 68 S.Ct. 1252, 1255, 92 L.Ed. 1690 (1948).

This basic principle was recently applied by us under similar circumstances in *United States v. Robin,* 545 F.2d 775 (2d Cir. 1976). Earlier, in *United States v. Malcolm,* 432 F.2d 809, 815 (2d Cir. 1970), we vacated a

---

portive counseling in a structured setting, he could very easily lose contact with reality.

"Recent psychological testing and psychiatric observation substantiate that Stein does possess a degree of paranoia which is on the verge of developing into schizophrenic psychosis. His depression is almost at the psychotic level. At this time he is still in contact with reality but the possibility of incarceration poses such a threat to him that he could easily decompensate at any time. The possi-

bility of further suicide attempts is realistic in this case, as it is believed that the recent previous gesture was prompted by the fear of confinement, and incarceration may yet be imminent.

"At the Medical Center he has been observed as suffering from a very severe affective disorder, as depicted in available reports. As suggested above, total personality disintegration has not occurred, yet he is tenuously close to a total break from reality."

sentence on the ground that the sentencing judge had proceeded under a misapprehension as to the defendant's criminal record and had denied defense counsel and the prosecutor an opportunity to present material information bearing on the sentence, including the nature and extent of the defendant's cooperation with law enforcement authorities. There we stated:

"Misinformation or misunderstanding that is materially untrue regarding a prior criminal record, or material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process.

\*   \*   \*   \*   \*   \*

"There can be no question that a defendant's cooperation in the investigation and prosecution of the murder of a policeman and other serious crimes is highly material to mitigation of punishment not only because the defendant should be rewarded for his services to the community but also because cooperation with law enforcement authorities is a significant step toward rehabilitation. Clearly, therefore, Malcolm had a right to present all available information bearing on his cooperation with the authorities fully and accurately, and, correlatively, the court had a duty to listen and to give such information serious consideration." 432 F.2d 809 at 816, 817.

These principles apply with singular force to the present case. Stein's motion, although labelled one for "mitigation" was actually founded upon a claim of denial of due process based upon the court's having acted on material misinformation.[7] The motion papers, moreover, make out a prima facie case of illegality, revealing that the sentencing judge was under a misapprehension as to at least two material facts when she sentenced Stein. According to the transcript, Judge Motley assumed that Stein

had unqualifiedly participated in an attempt to "fix" his earlier case before Judge Bryan. If true this was a material fact that could well have led the judge to impose the unusually severe sentence. The view that Stein had "feigned" suicide following imposition of sentence by Judge Bryan, while not as material as the supposed "fix," could nevertheless have been relevant to the sentence imposed and damaging to Stein since, if accepted as true, it would indicate that he had not been rehabilitated and that he was willing to engage in fraud upon the court in order to escape justice, thus confirming the Probation Officer's earlier adverse evaluation. Furthermore, the fact that the trial judge expressly referred to these matters upon imposition of sentence indicates that she probably considered them to be material; otherwise there would not have been any point in her mentioning them.

Thus the sentencing judge was confronted with more than a request to rebut some hearsay statements in a presentence report, see, e. g., United States v. Rosener, 485 F.2d 1213, 1230 (2d Cir. 1973), cert. denied, 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); United States v. Robin, supra. Here she was faced with evidence not controverted by the government to the effect that assumptions expressed by her at the time of sentencing with respect to material matters had been either partially or wholly incorrect. Under these circumstances the judge owed a duty either to explain that she had not been influenced by them or, if she had been, to make findings of fact after examining the evidence, which might or might not require a hearing. See United States v. Needles, 472 F.2d 652, 657–58 (2d Cir. 1973). If the evidence confirmed her assumptions, no further action would be required; if, on the other hand, the judge found that her material assumptions had been incorrect, it would become necessary

---

7. The motion papers failed to state the basis of Stein's invocation of the court's jurisdiction. To the extent that the motion may be deemed one under Rule 35, F.R.Cr.P.; for reduction of sentence on grounds of harshness, it may have

been time-barred, but the legality of the sentence, either under Rule 35 or 28 U.S.C. § 2255, could be raised at any time and was a matter within the district court's jurisdiction.

to vacate the sentence [8] and resentence the defendant. Instead, Judge Motley denied Stein's motion without any findings, content to rest on what she had stated at the time of sentencing.

■ This failure to reopen the matter when it was called to the court's attention by a post-sentencing motion underscores the trial judge's earlier error in refusing to permit Stein or his counsel to be heard immediately following the judge's remarks and imposition of sentence. We recognize that Judge Motley had at an earlier point in the sentencing permitted the defendant and his counsel to be heard at some length. But that was before her remarks to the effect that Stein had attempted to get the earlier "sentence fixed" and had made "an attempt to avoid going to jail by feigning suicide," which immediately preceded her imposition of sentence. Furthermore, in denying Stein's counsel the right to be heard for a "moment" immediately after sentence was imposed the judge remarked "We are not going to have anymore attempted suicides or anything else with Mr. Stein. We have been through that," thus emphasizing the importance of this matter in relation to the sentence imposed. While we appreciate the severe pressures under which the sentencing judge functions in this heavily overburdened court and that our criticism is of necessity the product of hindsight, it was nevertheless a denial of due process to refuse to hear Stein and his counsel in rebuttal. See, e. g., *United States v. Pow-*

*ell,* 487 F.2d 325, 329 (4th Cir. 1973); *Collins v. Buchkoe,* 493 F.2d 343, 345 (6th Cir. 1974).

■ The sentence here must be vacated on still another ground: the trial judge's failure, after reading the strongly adverse evaluation written by the Probation Officer in his 1971 report (which took the view that Stein was incorrigible and should be committed), to disclose that in his later 1975 supplemental report the Probation Officer, after a further study of the matter in the light of intervening events (including Stein's remorse and cooperation), had recommended that Stein be placed on probation. Judge Motley's verbatim reading in open court of the earlier detailed evaluation without revealing the later favorable one could only have created the erroneous impression that nothing had intervened to change the Probation Officer's adverse evaluation. Although the sentencing judge was not required to follow the Probation Officer's recommendation, it often constitutes one of the most important factors considered by the sentencing judge.

Once Judge Motley had revealed in detail the earlier adverse evaluation in which she concurred, fundamental fairness dictated that the more recent favorable evaluation recommending probation be brought to the attention of the defendant and his counsel, neither of whom had seen it, for such comment and suggestion as they might care to make.[9] We conclude that Judge Motley

---

**8.** Further support for appellant's position is found in the fact that after the claim that appellant had attempted to fix the sentence before him had been explored in depth by Judge Bryan upon appellant's motion for reduction of sentence, Judge Bryan apparently found no impropriety on appellant's part since he reduced the two-year sentence imposed upon Stein to time already served.

**9.** Effective August 1, 1975, Rule 32(c)(3)(A), F.R.Cr.P., was amended to provide:

"(A) Before imposing sentence the court shall upon request permit the defendant, or his counsel if he is so represented, to read the report of the presentence investigation exclusive of any recommendation as to sentence, but not to the extent that in the opinion of the court the report contains diagnostic opin-

ion which might seriously disrupt a program of rehabilitation, sources of information obtained upon a promise of confidentiality, or any other information which, if disclosed, might result in harm, physical or otherwise, to the defendant or other persons; and the court shall afford the defendant or his counsel an opportunity to comment thereon and, at the discretion of the court, to introduce testimony or other information relating to any alleged factual inaccuracy contained in the presentence report."

At the time Stein was sentenced by Judge Motley, however, the disclosure of the report or any part of it to a defendant or his counsel was left to the judge's discretion. The practice under this earlier version of the Rule varied according to the sentencing judge. Apparently no request was made by Stein for the sentenc-

must have overlooked the later favorable evaluation.[10] But even so the failure of the court to have considered this vital information before imposing sentence would in itself require that the sentence be vacated. *United States v. Malcolm,* 432 F.2d 809 (2d Cir. 1970).

Accordingly we reverse the denial of Stein's motion with directions to vacate the sentence and to resentence the defendant. Under the circumstances, including the recognized difficulty which an original sentencing judge may have in rejecting or modifying prior conclusions and the necessity of maintaining the appearance of justice, we direct that the resentencing be conducted by a different judge. See *United States v. Rosner,* 485 F.2d 1213, 1231 (2d Cir. 1973), *cert. denied,* 417 U.S. 950, 94 S.Ct. 3080, 41 L.Ed.2d 672 (1974); *United States v. Schwarz,* 500 F.2d 1350, 1352 (2d Cir. 1974); *O'Shea v. United States,* 491 F.2d 774, 778–80 (1st Cir.), *overruled as to a different* holding, *Wingo v. Wedding,* 418 U.S. 461, 473 n.19, 94 S.Ct. 2842, 41 L.Ed.2d 879 (1974).

LUMBARD, Circuit Judge (concurring):

From Judge Mansfield's thorough and convincing discussion of the facts, it seems to me that the sentence of ten years imposed on Stein violated the Eighth Amendment prohibition against the infliction of cruel and unusual punishments. Such a lengthy sentence has rarely been imposed in a stock fraud case. To impose this sentence on a defendant who has not only pleaded guilty but in addition has assisted the government, as Stein did in the instant case, by extensive testimony, as well as by

undercover work for other government agencies in other cases, is unprecedented and beyond all reason. The sentence is so severe as to be cruel and unusual under the circumstances. Hence, it cannot stand. Cf. *Hart v. Coiner,* 483 F.2d 136 (4th Cir.), cert. denied, 415 U.S. 938, 94 S.Ct. 1454, 39 L.Ed.2d 495 (1973). See also *Weems v. United States,* 217 U.S. 349, 30 S.Ct. 544, 54 L.Ed. 793 (1910); *Downey v. Perini,* 518 F.2d 1288 (6th Cir.), vacated on other grounds, 423 U.S. 993, 96 S.Ct. 419, 46 L.Ed.2d 367 (1975).

While I fully agree with all the other reasons Judge Mansfield has given which demonstrate that the district judge failed to consider the significant facts and opinions which were highly relevant to the sentence, I would set aside such a sentence as was here imposed even if the judge had properly noted this material and had given adequate opportunity for the defendant and his counsel to be heard.

In my opinion to let such a sentence stand would seriously cripple the necessary efforts of the government to secure the cooperation of malefactors without whose assistance and testimony it is often not possible to prosecute their many partners in crime. I do not overlook the government's intermediate position, doubtless made necessary by the amenities which prosecutors must observe when a judge's decision goes far beyond expectations, that the sentence should not have been longer than five years. Nor do I overlook the fact that Stein's transgressions deserve more than token punishment and the consideration that there must be substantial doubt whether

---

ing reports and we therefore do not know whether the reports would have been made available to him in whole or part by the trial judge.

10. The likelihood that the later evaluation was overlooked by the sentencing judge is suggested by the fact that the supplemental pre-sentence report consists of four pages, the last of which was signed by the Probation Officer, plus a fifth page entitled "Evaluative Summary" dated on the same day as the earlier pages (3/12/75) and also signed by the Probation Officer.

It is possible that the sentencing judge, upon reaching the end of the fourth page, which bears the salutation "Respectfully submitted" followed by the Probation Officer's signature, thought that this was the end of the report and failed to turn to the next page which contains the evaluation, plus the same closing salutation and signature. Indeed, in her remarks in the robing room conference immediately preceding the sentence she described the supplemental report as "a three and a quarter page report."

anything like rehabilitation is possible for such a long-time repeated offender.

For these reasons I agree that the sentence should be vacated and the case remanded to the district court for resentencing before a different district judge.