**UNITED STATES of America,**
**Appellant,**

v.

**Charles B. COYER.   (Two cases)**

**Nos. 83–1885, 83–2007.**

United States Court of Appeals, District of Columbia Circuit.

Argued Feb. 7, 1984.

Decided April 10, 1984.

Judith Hetherton, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty., Washington, D.C., at the time the brief was filed, and Michael W.

Farrell, Asst. U.S. Atty., Washington, D.C., were on the brief for appellant.

Larry S. Gondelman, Washington, D.C., with whom William G. Hundley, Washington, D.C. (appointed by this Court) was on the brief for appellee.

Before WALD, BORK and STARR, Circuit Judges.

Opinion for the Court filed by Circuit Judge STARR.

STARR, Circuit Judge:

The sole but important issue presented by this appeal is whether the District Court acted properly in vacating the sentence of a criminal defendant under 28 U.S.C. § 2255 (Supp. V 1981). The court granted section 2255 relief on the grounds that in imposing sentence originally it had relied on an estimate, which subsequently proved to be incorrect, contained in a pre-sentence investigation report of the amount of time that would be served by the defendant. We are constrained to conclude, for the reasons that follow, that the District Court erred.

## I.

The trail of events leading to the question now before us began in October 1981, when a federal grand jury in the District of Columbia returned a fourteen count indictment charging Mr. Coyer with various violations of federal and District of Columbia criminal laws arising out of two proposed real estate investment projects. The first twelve counts of the indictment related to an alleged scheme to defraud investors in Richmond, Virginia and Washington, D.C. in the course of a proposal to purchase real estate in Richmond and to develop the property into rental apartment housing. The indictment charged that Mr. Coyer, who was acting as the promoter for the investment scheme, obtained $95,000 from the Washington and Richmond investors by means of false representations and that he thereafter converted these fraudulently secured funds to his own use. The last two counts of the indictment charged appellee with having defrauded one of the Washington investors in the original venture of an additional $10,000 in connection with the proposed purchase of an apartment building in Washington, D.C.[1]

Represented by court appointed counsel, Mr. Coyer entered a guilty plea to a single count (Count 13) of the indictment on January 15, 1982. Almost three months later, on April 5, 1982, the District Court sentenced Mr. Coyer to imprisonment for a period of from one to three years. The remaining thirteen counts of the indictment were dismissed. Consistent with the District Court's recommendation that Mr. Coyer be incarcerated at a minimum security institution and following the court's granting an extension of time within which appellee was to surrender himself to the custody of the Attorney General, Mr. Coyer began serving his sentence at the minimum security facility at Eglin Air Force Base, Florida, on May 28, 1982.

The ensuing months passed uneventfully until, in late 1982, Mr. Coyer wrote directly to the District Court indicating that he found himself in the unenviable "position of badly needing help and guidance." According to his letter, which the District Court construed as a motion to vacate or correct sentence under 28 U.S.C. § 2255, Mr. Coyer was disconcerted to learn that, by the application of United States Parole Commission guidelines, he would remain incarcerated "by up to an additional 12 months" beyond the one-year period that the District Court had apparently originally intended in imposing sentence. The basis of Mr. Coyer's assumption as to the intended actual length of his one-to-three-year sentence was that, prior to his April 5, 1982

---

1. Specifically, the indictment charged appellant with four counts of wire fraud, 18 U.S.C. § 1343 (1982); three counts of mail fraud, *id.* § 1341; one count of interstate transportation of money taken by fraud, *id.* § 2314; one count of inducing a person to travel interstate (from Washington to Richmond) pursuant to a scheme to defraud that person, *id.;* two counts of felony false pretenses, D.C.Code § 22–1301; one count of felony embezzlement of partnership funds, *id.* § 22–1202; and two counts of grand larceny after trust, *id.* § 22–2203.

sentencing, a presentence report had been prepared by the United States Probation Office attached to the federal district court for the District of South Carolina, the district in which Mr. Coyer had been residing since 1978. That report canvassed the prosecution's case against Mr. Coyer as to all fourteen counts, set forth Mr. Coyer's version of the facts underlying the offenses charged, and then stated:

> If committed, it is estimated that [Mr. Coyer] will be required to serve between 10 and 14 months, according to the U.S. Parole Commission Guidelines.

The estimate, however, turned out to be incorrect, to Mr. Coyer's great distress. In calculating appellee's presumptive parole release date, the Parole Commission representatives who interviewed Mr. Coyer at the federal correctional facility at Eglin had, according to the latter's missive to the District Court, taken into account the thirteen dismissed counts in the October 1981 indictment, rather than focusing exclusively upon the single count to which he had pled guilty. This represented, Mr. Coyer concluded, "a material change [in the sentence], contrary to what was intended and understood by all at … sentencing."

In response to Mr. Coyer's letter, the District Court issued an order on January 28, 1983, directing the Government to respond to appellee's claims. In that order, the court stated:

> The Court is reminded of the strong representation in the presentence report with respect to the amount of time defendant would be required to serve on his sentence according to the Parole Commission guidelines. It now appears that this information may have been inaccurate.

As foreshadowed by the January 1983 order, the District Court on August 8, 1983, vacated Mr. Coyer's sentence, ordered his release on his own recognizance, and set a resentencing hearing for early September 1983. The district judge stated that "the Court relied on the accuracy of the probation office's estimation" in originally imposing sentence. Memorandum Opinion at 4.

Tracing the case law development of the principle that a challenge appropriately lies "to a sentence imposed by a federal judge who relied in sentencing on 'misinformation of constitutional magnitude,' " *id.* at 6 the District Court concluded that "the basic principle of fairness" undergirding prior sentencing cases was implicated by the specific facts of Mr. Coyer's situation:

> The [prior] cases … all involved misinformation regarding a defendant's prior criminal record or prior conduct, that later appeared to be false or unreliable. The information relied upon by the Court in the instant situation involved application of the Parole Commission's guidelines. But the prejudicial effect on [Mr. Coyer] is the same in this case …; but for the inaccurate information contained in the presentence report and relied upon by the Court, [Mr. Coyer] would have been sentenced less severely. The negative impact of this misinformation on defendant's liberty interests is clear, and the error is therefore of "constitutional magnitude."

*Id.* at 8. Distinguishing the Supreme Court's holding in *United States v. Addonizio*, 442 U.S. 178, 99 S.Ct. 2235, 60 L.Ed.2d 805 (1979), where the Court held that a sentencing judge has "no enforceable expectations with respect to the actual release of a sentenced defendant short of his statutory term," *id.* at 190, 99 S.Ct. at 2243, the District Court concluded that in the case at hand, unlike *Addonizio*, the sentencing judge had been supplied with misinformation:

> The distinction is that, in *Addonizio*, the sentencing judge provided with accurate information simply guessed wrong as to how the Parole Commission would implement his sentence. In the instant action, however, the [District] Court was provided with factually incorrect information regarding the Parole Commission's guidelines; had that information been correct, the result at sentencing would have been different.

Memorandum Opinion at 9. In the District Court's analysis, "the error in [Mr. Coy-

er's] presentence report" brought this case within the line of such watershed decisions as *United States v. Tucker,* 404 U.S. 443, 92 S.Ct. 589, 30 L.Ed.2d 592 (1972), where the Supreme Court held that a sentencing judge could not lawfully give consideration to constitutionally invalid prior convictions in imposing sentence. To do so, the Supreme Court concluded, would be to rely upon "misinformation of constitutional magnitude," *id.* at 447, 92 S.Ct. at 592, and would thereby impermissibly erode the rule of *Gideon v. Wainwright,* 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), since two of Mr. Tucker's prior convictions, upon which the sentencing judge had relied, resulted from proceedings in which Mr. Tucker had not been represented by counsel.

In a word, the force of *Tucker* and its progeny led ineluctably, in the District Court's analysis, to the conclusion that a sentence based upon "mistaken information," Memorandum Opinion at 6, cannot stand.[2] Accordingly, on September 14, 1983, the District Court found Mr. Coyer guilty as charged, suspended sentence, and placed him on probation for a period of five years.[3] This appeal followed.

## II.

In our analysis of this appeal, we begin with the bedrock fact that this is a collateral attack under section 2255, not a motion to reduce sentence under Fed.R.Crim.P. 35. The significance of this procedural posture is that the sentence under attack must be one that, under the circumstances of this case, was imposed in violation of the Constitution or laws of the United States. There is no contention here, nor could there be, that the sentencing court was "without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law . . . ." 28 U.S.C. § 2255. The District Court, accordingly, grounded its disposition on the conclusion that incorrect "information" relied upon in imposing sentence created a remediable constitutional defect in the original sentencing proceedings.

To reach that conclusion, the District Court determined that the original sentence imposed on Mr. Coyer was fatally infected by a Due Process violation. That fundamental defect, as suggested above, arose by virtue of the District Court's acting upon the basis of "erroneous information" represented by the probation officer's incorrect estimate of the actual time appellee would be incarcerated. This "misinformation" was viewed as partaking of constitutional significance, because the District Court's undisputed reliance upon this erroneous estimate resulted in the imposition of a longer sentence than otherwise would have been imposed.

We respectfully disagree with the learned District Judge's analysis in two respects. First, in contrast to *United States v. Tucker, supra,*[4] the probation of-

---

**2.** The District Court was of the view that "some tension arises between the implications of *Tucker* and *Addonizio,*" Memorandum Opinion at 9. But in the court's view, *Addonizio* did not involve "mistaken information," *id.* at 6, or any "error of fact." *Id.* at 9. The District Court then analyzed two post-*Addonizio* lower court decisions, *Buckhannon v. Hambrick,* 487 F.Supp. 41 (S.D.N.Y.1980), and *United States v. DeMier,* 520 F.Supp. 1160 (W.D.Mo.1981), *aff'd,* 671 F.2d 1200 (8th Cir.1982). Relying upon the latter decision, the District Court noted approvingly that the *DeMier* court had granted relief under Fed.R.Crim.P. 35 as a result of the District Court's having been erroneously provided by the probation office with outdated Parole Commission guidelines upon which the judge relied in imposing sentence. The District Court further held that the fact that the defendant in *DeMier* had proceeded by a timely filed Rule 35 motion

to reduce sentence, as opposed to a motion under 28 U.S.C. § 2255, was "without significance . . . ." Memorandum Opinion at 11. *See* note 7, *infra.*

**3.** The District Court was apprised by newly appointed counsel for Mr. Coyer, William G. Hundley, that a state indictment had been returned against Mr. Coyer in South Carolina and that an arrest warrant had been issued and was outstanding. In consequence, the District Judge required, as one of three conditions of probation, that Mr. Coyer report to the Sheriff's Office at Beaufort, South Carolina, on or before September 22, 1983.

**4.** *Tucker,* as the District Court rightly observed, has its analytical roots in *Townsend v. Burke,* 334 U.S. 736, 68 S.Ct. 1252, 92 L.Ed. 1690 (1948). In that case, the prisoner's sentence had been

ficer's estimate of the Parole Commission's likely action did not represent a factual determination upon which the District Court could reasonably rely. The probation officer's statement was on its face and by its express terms an estimate, nothing more, nothing less. The source of that estimate was, moreover, a probation office, an integral part of the federal judicial apparatus.

This leads us to the second and more fundamental objection to what occurred below. The District Court's reasoning, albeit springing from humane concerns of fundamental fairness that inform the Due Process Clause, has led to an impermissible intrusion into the orderly operations of the United States Parole Commission, the entity specifically charged by Congress with determining, within the sentence provided by law and meted out by the District Judge, the date when federal prisoners are actually to be released from incarceration. At bottom, the District Court in this case transformed the estimate of a probation officer—a court employee—in Charleston, South Carolina, into a conclusive determination binding upon the Parole Commission, an independent agency of the Executive subject to the supervisory oversight of the Congress. This result improperly aborts an elaborate congressionally mandated process by which the circumstances of each

federal inmate are reviewed through the Parole Commission's application of highly developed guidelines which have nationwide applicability. The net effect of the District Court's disposition in this case is therefore to permit a single probation office—an adjunct of the judiciary itself—to bind the Parole Commission in making its independent professional judgments. Indeed, the Parole Commission's determination that a more lengthy period of incarceration was called for here, within the limits of the sentence lawfully imposed by the District Court in the first instance, was based largely upon the magnitude of the fraud charged in Counts One through Twelve of the October 1981 indictment, the consideration of which was manifestly lawful and entirely appropriate.

This intrusion into the province of the Parole Commission is plainly prohibited by the Supreme Court's teaching in *Addonizio*.[5] In unmistakable language, the Court held that "there is no basis for enlarging the grounds for collateral attack to include claims based not on any objectively ascertainable error but on the frustration of the subjective intent of the sentencing judge." 442 U.S. at 187, 99 S.Ct. at 2241. There was nothing here remotely approaching "objectively ascertainable error," such as that which existed in *United States v. Tucker* where the sentencing court had

imposed by a judge who was of the patently erroneous view that the defendant had three prior convictions, when in reality those dispositions had been dismissals or acquittals. The Supreme Court concluded that the sentence was invalid inasmuch as it was "predicated on misinformation or misreading of court records." 334 U.S. at 741, 68 S.Ct. at 1255. Thus, the factual setting of *Townsend v. Burke* fits squarely within the *Addonizio* standard of "objectively ascertainable error," as discussed below in the text that follows. No estimates or speculations were, as here, at the heart of that case.

**5.** *United States v. Addonizio* is, to be sure, not on all fours factually with this case. Here, the relevant Parole Commission guidelines remained constant and unchanged during the relevant period, whereas in *Addonizio*, the Parole Commission *after the sentencing* of Mayor Addonizio changed its policies with the effect of prolonging the former Mayor's period of impris-

onment beyond what the sentencing judge had anticipated. But simply to state this factual difference is to suggest that the distinction is of no help to appellee. Quite to the contrary, appellee was faced with no after-the-fact, post-sentencing change in Parole Commission policy that frustrated the District Court's "sentencing expectations." The objective criteria—or guidelines—applicable to appellee remained as constant and unchanging as the laws of the Medes and Persians. The Parole Commission simply disagreed, in the course of applying the same criteria utilized by the South Carolina probation officer, with a non-binding estimate of what the Parole Commission would eventually conclude. The very term, "estimate," under these circumstances implicitly recognizes that the *actual decision itself* as to appellee's release date rested not with a court-employed probation officer but with the Executive branch agency responsible for making those determinations, within the confines, of course, of the sentence itself.

relied upon counselless convictions rendered nugatory by *Gideon v. Wainwright.* It simply will not do to twist what was clearly a probation officer's mere estimate into "objectively ascertainable error" within the meaning of *Addonizio.*[6] Not only did the probation officer flatly characterize for the world to see his projection of time Mr. Coyer would likely serve as an "estimate," but he confirmed this plain understanding in a letter of December 8, 1982, to the Atlanta Regional Commissioner of the United States Parole Commission:

> [W]e realize that our estimates have no binding influence on the decision making process of the United States Parole Commission.

The probation officer's function in this respect was to prophesy a result yet to be determined; prophets, even professionally trained ones, are sometimes wrong.

In short, an estimate labeled as such does not rise to the level of objectively ascertainable information. There was thus no erroneous information or misinformation within the meaning of *Addonizio* so as to warrant the District Court's vacating the original sentence.[7]

Accordingly, the District Court's orders vacating the original sentence and thereafter resentencing Mr. Coyer are hereby vacated. The case is remanded to the District Court for the purpose of reinstating appellee's original sentence and for such further

6. Notably, an official publication of the Division of Probation of the Administrative Office of the United States Courts, in setting forth the mandated contents of a presentence investigation report, provides that the probation officer is to include the "*estimate* of the salient fact or score, offense severity rating and probable months to be spent in custody according to the U.S. Parole Commission Guidelines for decisionmaking." The Presentence Investigation Report, Division of Probation, Administrative Office of the United States Courts 16 (1978). Tellingly, the italicized emphasis of the pivotal word, "estimate," is found in the original.

7. The District Court relied, as does appellee, upon broad language in several circuit court decisions in reaching its result in this case. The Second Circuit, for example, stated in *United States v. Malcolm,* 432 F.2d 809, 816 (2d Cir. 1970), that "material false assumptions as to any facts relevant to sentencing, renders the entire sentencing procedure invalid as a violation of due process." But in that case, the sentencing judge mistakenly stated and indeed emphasized "that Malcolm had pleaded guilty to four other crimes. The record ... shows that the judge was confused, if not altogether mistaken, about Malcolm's criminal record." Thus, *Malcolm* fits squarely within the plain holding of *Townsend v. Burke,* and satisfies the *Addonizio* criterion of "objectively ascertainable error." *See also United States v. Stein,* 544 F.2d 96, 102 (2d Cir.1976) ("the sentencing judge was under a misapprehension as to at least two material facts," including an erroneous conclusion that the defendant had attempted to "fix" an earlier case); *United States v. Weston,* 448 F.2d 626 (9th Cir. 1971), *cert. denied,* 404 U.S. 1061, 92 S.Ct. 748, 30 L.Ed.2d 749 (1972) (a pre-sentence report contained sweeping charges that the defendant was a principal distributor of narcotics in the area of western Washington state, but the report

was deemed highly unreliable inasmuch as it was based upon much more limited allegations in unverified, unsworn statements by a single informant). Hence, *Weston* at most expands the ambit of remediable defects in sentencing to include unreliable factual assertions or conclusions as to the nature and scope of a defendant's criminal activities. There is no contention here that the presentence investigation report was wrong in its factual rendition of Mr. Coyer's background and his real estate investment activities that gave rise to the instant charges, nor that the report, as in *Weston,* contained sweeping and unreliable conclusions as to appellee's criminal conduct.

In addition to the language in various circuit court decisions, the District Court, and now the appellee, relied upon a holding of the District Court for the Western District of Missouri which was affirmed by the Eighth Circuit. In *United States v. DeMier,* 520 F.Supp. 1160 (W.D. Mo.1981), *aff'd,* 671 F.2d 1200 (8th Cir.1982), referred to in footnote 2, *supra,* Rule 35 relief was granted to a federal prisoner who had been sentenced in proceedings in which the district judge had been furnished information based upon *outdated* Parole Commission guidelines. Without pausing to focus on the differences between a Rule 35 motion and a § 2255 petition, we note that, unlike in *Addonizio,* the specific, objective information given to the district judge in *DeMier* was erroneous. Specifically, in *DeMier* the Probation Office relied upon 1978 Guidelines when in fact the Parole Commission employed Guidelines promulgated in 1979. In contrast, in the case at hand, there is no contention that the probation officer was using or referring to incorrect or outdated guidelines; rather, the probation officer merely made an estimate of what the Parole Commission would subsequently decide in applying guidelines that were neither changed nor superseded.

orders as are appropriate, consistent with this opinion, including ordering appellee's return to the custody of the Attorney General or his designate.[8]

*It is so ordered.*

---

8. We highly commend Mr. Coyer's appointed counsel for the exemplary professional manner in which this appeal has been briefed and argued.